IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL M. WOODS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 20-086-LPS |
| | : |
| DANA METZGER, et al., | : |
| | : |
| Defendants. | : |

Daniel M. Woods, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro Se Plaintiff.

**MEMORANDUM OPINION**

June 15, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

I.      **INTRODUCTION**

Plaintiff Daniel M. Woods ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 1) He also raises supplemental state claims. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5) He requests counsel. (D.I. 6) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

II.     **BACKGROUND**

On September 27, 2019, Plaintiff was housed in the Medium-High Housing Unit ("MHU") and locked in his cell. (D.I. 3 at 4) Plaintiff had covered his cell window because he was using the toilet, and inmates were playing cards directly in front of his cell. (*Id.*) Defendant Sgt. Joshua Lawrence ("Lawrence"), accompanied by Defendants C/O Koch ("Koch") and C/O Simpson ("Simpson"), arrived at the tier to retrieve another inmate. (*Id.* at 5) Lawrence saw that Plaintiff's cell window was covered and yelled at Plaintiff to take it down. (*Id.*) Next, Lawrence gave an order to open the cell door just as Plaintiff was getting off the toilet. (*Id.*) Plaintiff alleges that Lawrence was "very aggressive" and yelled in Plaintiff's face in a threatening manner. (*Id.*) Plaintiff told Lawrence that he did not appreciate his yelling and that he wished to speak to a lieutenant, and Lawrence began to reach for his mace. (*Id.*) Lawrence told Plaintiff that he would learn who he was and slammed the cell door (apparently locking it) even though it was Plaintiff's rec time. (*Id.*) Plaintiff again told Lawrence that he wanted to speak with a lieutenant and Lawrence "said no." (*Id.*)

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Lawrence returned to Plaintiff's cell and ordered Plaintiff to turn around and cuff up. (*Id.* at 6)  Plaintiff alleges that Lawrence had his hand on his mace. (*Id.*)  Plaintiff alleges that Koch placed the handcuffs on so tightly that they were cutting into Plaintiff's wrists. (*Id.*)  Plaintiff complained to Lawrence, Koch, and Simpson that the handcuffs were causing pain and needed to be loosened. (*Id.*)  Lawrence, Koch, and Simpson escorted Plaintiff to a holding cell, where Plaintiff was guarded by Simpson. (*Id.*)

Plaintiff continued to complain. (*Id.* at 7)  When Lawrence arrived thirty minutes later, Plaintiff told him that the handcuffs were hurting "severely" and Lawrence replied that he did not care. (*Id.*)  Lawrence and two other correctional officers escorted Plaintiff from MHU to isolation, about a mile walk. (*Id.*)  Plaintiff was cuffed and shackled. (*Id.*)

Plaintiff was seen by Defendant Nurse Andrew ("Andrew") prior to his placement in isolation. (*Id.*)  Plaintiff alleges that because he was rushed through medical prior to the transfer, the handcuffs could not be removed; he alleges that Andrews was not present when Defendant Sgt. Kirlin ("Kirlin"), Lawrence, Koch, and two other unidentified officers began removing the shackles and cuffs when he arrived in isolation. (*Id.* at 7-8)  Plaintiff showed Kirlin, Lawrence, Koch, and the other officers the deep cuts into his wrist and stated that he needed medical attention. (*Id.* at 8)  Kirlin told Plaintiff to back up before he maced Plaintiff. (*Id.*)  Plaintiff alleges that Kirlin, Lawrence, and Koch failed to notify medical of his injuries. (*Id.*)  Plaintiff waited until medical personnel made medication rounds and showed his injuries to Andrew. (*Id.*)  Plaintiff alleges that Andrew failed to take any action and told Plaintiff to wash the wounds with soap and water. (*Id.*)

Plaintiff alleges that he was housed in isolation in a dirty cell, he had nothing to clean with, and he had to sleep on the floor of his mattress, all while suffering from open wounds. (*Id.* at 8-9)  He alleges that a severely mentally ill inmate housed three doors down was throwing human waste

and urine all over the lower part of the tier, very close to where Plaintiff was housed (with his open wounds). (*Id.* at 8-9)

The next day, when Defendant Nurse Eric ("Eric") made medication rounds, Plaintiff showed him the severe cuts on his wrists made by the handcuffs. (*Id.* at 9) Plaintiff alleges that Eric failed to take any action. (*Id.*) On September 29, 2019, Plaintiff showed Defendant Nurse Jane Doe ("Doe") the deep wounds and complained that he had lost all feeling on the back of his hands. (*Id.*) Plaintiff alleges that Doe failed to take any action. (*Id.*)

When Plaintiff was next seen by Eric, he told Plaintiff to wash with soap and water and keep the area clean. (*Id.*) Plaintiff alleges that his injuries were caused by dirty, unsanitary handcuffs used on hundreds of inmates and that medical staff Andrew, Eric, and Doe were negligent and deliberately indifferent when they failed to clean and/or wrap his wounds and provide medical care. (*Id.* at 9, 12, 13) Plaintiff alleges that he continues to have no feeling on the back of both hands and has scarring from the handcuffs. (*Id.* at 10, 12) He also alleges that medical failed to send him to see a specialist and that he continues to be denied medical care. (*Id.*)

Plaintiff alleges that Defendant Warden Dana Metzger ("Warden Metzger") failed to provide an efficient grievance procedure and does not keep a record of excessive force investigations, as a means to cover-up staff misconduct. (*Id.* at 10) Plaintiff's grievance was deemed "non-grievable." (*Id.*) He alleges that Captain Dotson was asked to investigate the matter, but Plaintiff has yet to be contacted for questioning regarding the matter. (*Id.*) Plaintiff alleges that he wrote to Warden Metzger and inquired why there had been no investigation of the excessive force used by staff; Metzger allegedly responded that he was offended that Plaintiff had questioned whether there had been an investigation. (*Id.* at 12) On September 30, 2019, Plaintiff saw Lt. Kurley and Sgt. Tilman, who took photos of Plaintiff's wounds and wrote incident reports. (*Id.* at 9-10)

During the first day that Plaintiff was housed in isolation, he was served with disciplinary charges for several infractions. (*Id.* at 11) A disciplinary hearing was held on October 4, 2019. Plaintiff alleges that the hearing officer, Defendant Wallace, refused to call any witnesses and stated that he had a "full picture of the incident" from the officers' reports. (*Id.*) Plaintiff alleges that the incident report contained incorrect information. (*Id.*) Plaintiff alleges that he was not provided a copy of the incident report, in violation of his right to due process. (*Id.* at 12) Plaintiff alleges he pled guilty to an offense even though he was innocent so that he could be released from isolation and care for his wounds. (*Id.* at 9) Plaintiff received a sanction and was transferred from isolation to segregation (*i.e.*, SHU). (*Id.* at 11) Plaintiff alleges that following the hearing, Wallace spoke to Plaintiff's witness, who supported Plaintiff's version of the events. (*Id.*) Finally, Plaintiff alleges that correctional staff is required to cuff all inmates housed in SHU for any movement and that dirty cuffs were continually placed over his open wounds. (*Id.* at 13)

Plaintiff seeks compensatory and punitive damages.

### III.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally

construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his Complaint unless amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306,

5

315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Excessive Force

Plaintiff alleges that Lawrence, Koch, and Simpson used excessive force in violation of the Eighth Amendment and committed assault and battery under Delaware law. (D.I. 3 at 13) He will be allowed to proceed against these defendants. In addition, Plaintiff will be allowed to proceed against Warden Metzger, whom he alleges was aware of the foregoing Defendants' history of abuse of inmates and took no action. (*Id.* at 15)

The Complaint contains allegations directed towards Kirlin. However, Kirlin is not mentioned in any of Plaintiff's claims for relief. To the extent Plaintiff alleges excessive force against Kirlin, the claim fails. The allegations are that Kirlin threatened to mace Plaintiff, but that he did not actually mace him. All claims against Kirlin will be dismissed as legally frivolous.

### B.     Due Process

Plaintiff alleges that Wallace violated his right to due process when he refused to call Plaintiff's witnesses and found him guilty without conducting a proper hearing. (D.I. 3 at 15) Following his guilty plea, Plaintiff was transferred to SHU.

"It is well established that '[p]risoners . . . may not be deprived of life, liberty or property without due process of law.'" *Burns v. Pennsylvania Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) )(alteration and omission in original). "Inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Id.* at 170-71 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Plaintiff is entitled to procedural due process in his prison disciplinary hearing only when the outcome affects a protected liberty interest by "impos[ing] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Mitchell v. Horn,* 318 F.3d 523, 531 (3d Cir. 2003) (quoting *Sandin*, 515 U.S. at 484).

A state prisoner's confinement in administrative segregation for 15 months has been held not to impose an atypical and significant hardship on a prisoner. *See Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d Cir. 1997); *see also Fountain v. Vaughn*, 679 F. App'x 117, 120 (3d Cir. Feb. 17, 2017) (placement in segregated population for less than one month not atypical or significant hardship that would deprive plaintiff of state-created liberty interest). When Plaintiff commenced this action, he had been housed in SHU for approximately four months, an insufficient amount of time to impose upon him an atypical and significant hardship.

The Complaint does not demonstrate that Plaintiff was derived of a liberty interest. Hence, it fails to state a cognizable due process claim. Therefore, the due process claim will be dismissed as legally frivolous.

### C. Grievance and Investigation

Plaintiff alleges that Warden Metzger failed to provide an efficient grievance procedure and did not investigate Plaintiff's complaints of excessive force. The filing of prison grievances is a constitutionally protected activity. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure, an inadequate investigation or denial of his grievances, the claims fail because Plaintiff has no freestanding claim based on the denial of his grievances. *See Hayes v. Gilmore*, 802 F. App'x 84, 87-88 (3d Cir. 2020) (citing *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted)); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.")).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, were denied, or that the grievance process is inadequate. Therefore, the Court will dismiss all grievance claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Medical

Plaintiff alleges that Andrew, Eric, Doe, and former medical contractor provider Connections violated his rights under the Eighth Amendment by failing to provide adequate medical care and continued care. (D.I. 3 at 15) Plaintiff will be allowed to proceed with the medical needs claims against Andrew, Eric, and Doe.

The claim against Connections will be dismissed. The Complaint contains no allegations directed towards Connections. In addition, when a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates deliberate indifference. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be basis for liability under 42 U.S.C. § 1983, corporation under contract with state cannot be held liable for acts of its employees and agents under those theories); *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989). There are no allegations of this type against Connections. Therefore, the § 1983 claim against Connections will be dismissed as frivolous.

To the extent Plaintiff also alleges medical negligence, the claim will be dismissed. The Supreme Court has held that prison authorities "mere negligence in and of itself does not violate prisoners'" constitutional rights. *Daniels v. Williams*, 474 U.S. 327, 330-30 (1986)); *see also Walker v. Reed*, 104 F.3d 156, 158 (8th Cir. 1997) (holding that prison officials' simple negligence does not amount to violation of Eighth Amendment prohibition against cruel and unusual punishment for inhuman conditions of confinement).

In addition, in Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. *See* 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citing *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)); 18 Del. C. § 6853. In addition, in alleging medical negligence, at the time he filed the complaint, Plaintiff was required to submit an affidavit of merit as to each defendant, signed by an expert

9

witness. 18 Del. C. § 6853(a)(1). Plaintiff did not comply with this requirement. Accordingly, the negligence claims will be dismissed as frivolous.

## V. REQUESTS FOR COUNSEL

Plaintiff requests counsel on the grounds that he is unable to afford counsel, the issues are complex, he has extremely limited law library access, he has be unable to retain counsel, and he has limited knowledge of the law. (D.I. 6)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[2] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *See Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *See Tabron*, 6 F.3d at 157.

---

[2] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize federal court to require unwilling attorney to represent indigent civil litigant, operative word in statute being "request").

Several of the *Tabron* factors militate against granting Plaintiff's request for counsel at this time. To date, Plaintiff has ably represented himself and presented his claims. In addition, this case is in the early stages, no defendant having yet been served. Accordingly, at this time the Court finds that counsel is not necessary. Therefore, the request will be denied without prejudice to renew. (D.I. 6)

## VI. CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's request for counsel without prejudice to renew (D.I. 6); (2) dismiss the grievance claim, medical negligence claim, and all claims against Lt. Wallace, Sgt. Kirlin, and Connections as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1); and (3) allow Plaintiff to proceed against Warden Dana Metzger, Sgt. Lawrence, C/O Simpson, C/O Todd Koch, Nurse Andrew, Nurse Eric, and Nurse Jane Doe.

An appropriate Order will be entered.